Armond M. Jackson, SBN 281547
ajackson@jacksonapc.com
Andrea M. Fernandez-Jackson, SBN 295924
afernandez@jacksonapc.com
Anthony S. Filer, Jr., SBN 337704
afiler@jacksonapc.com
**JACKSON APC**
2 Venture Plaza, Suite 240
Irvine, CA 92618
Phone: (949) 281-6857
Fax: (949) 777-6218

Attorneys for Plaintiff Fred Ellis

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

FRED ELLIS, an individual,

  Plaintiff,

  vs.

US DEPARTMENT OF THE NAVY; CARLOS DEL TORO, in his official capacity as United States Secretary of the Navy,

  Defendant.

Case No.: '23CV2111 BEN AHG

**COMPLAINT FOR:**

1. **VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (CAL GOV'T CODE, § 12940 (a))—RACE, SEX AND GENDER DISCRIMINATION;**

2. **VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 USC § 2000E-2(A)(1))—RACE, SEX AND GENDER DISCRIMINATION;**

3. **HOSTILE WORK ENVIRONMENT HARASSMENT (CAL GOV'T CODE, §§ 12923, 12940(j));**

4. **VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 USC § 2000E-2(A)(1))—HARASSMENT;**

5. **VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (GOV'T CODE, § 12940 (h))—RETALIATION;**

**6. VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 USC § 2000E-2(A)(1))—RETALIATION; AND**

**7. VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (CAL. GOV'T CODE, § 12940 (k))—FAILURE TO PREVENT.**

**[JURY DEMAND]**

# INTRODUCTION

Historically, African-Americans serving and working in the United States Department of Defense have suffered discrimination at every rank, division, and assignment. This case concerns allegations of discrimination and harassment of a African American Male serving as a carpenter our armed forces, in addition to the retaliation he suffered after notifying the Department through a formal complaint.

# STATEMENT OF JURISDICTION

This Court has original jurisdiction based on the diversity of parties and is a civil action involving federal law. 28 U.S.C. §1331 et seq.

# GENERAL ALLEGATIONS
## The Parties and Venue.

1. Plaintiff, Fred Ellis, (hereinafter "Plaintiff" or "Mr. Ellis") is, and at all relevant times was, an individual with residence within the County of San Diego.

2. Mr. Ellis worked for Defendant US Department of the Navy ("Defendant" or "the Navy"), in the County of San Diego. Defendant's conduct hereinafter alleged occurred in said County and State. Mr. Ellis is informed and believes and thereon alleges that Defendant is a government organization with its principal place of business located at 1000 Navy Pentagon, Washington, DC 20350-1200. Mr. Ellis is further informed and believes and, on that basis, alleges that at all relevant times that Defendant regularly employed fifty or more persons at its business location in California, including Mr. Ellis; and is an employer as defined in the California Fair Employment and Housing Act ("FEHA").

3. Mr. Ellis worked for Defendant Carlos Del Toro ("Defendant" or "Mr. Del Toro"), in the County of San Diego. Defendant's conduct hereinafter alleged occurred in said County and State. Mr. Ellis is informed and believes and thereon

alleges that Defendant is an individual with his principal place of residence in the same State and County.

4. US Department of the Navy and Carlos Del Toro will be collectively referred to herein as ("Defendants")

**Doe Allegations.**

5. Mr. Ellis does not presently know the true names and capacities of Defendants named as Doe 1 through Doe 50, inclusive. Mr. Ellis will amend this complaint, setting forth the true names and capacities of these fictitious Defendants, when they are ascertained. Mr. Ellis is informed and believes and, on that basis, alleges that each of the fictitious Defendants has participated in the acts alleged in this complaint to have been done by the named Defendants.

**Vicarious Liability.**

6. Unless otherwise indicated, each defendant herein sued is the agent, co-conspirator, joint venturer, partner, and/or employee of every other defendant and, as alleged, has been acting within the course and scope of said agency, conspiracy, joint venture, partnership, and/or employment, with the knowledge and/or consent of co-Defendant, and each of them. Mr. Ellis is informed and believes and thereon alleges that each defendant has authorized and/or ratified the wrongful activities of each of the remaining Defendants.

7. The Defendants' conduct was undertaken by its officers, managing agents, and other persons responsible for the supervision of employees and for the drafting and implementation of policies and other managerial decisions. The conduct of the officers, managing agents, and other individuals was on behalf of the Defendants. Further, the Defendants had advanced knowledge of such conduct of said individuals whose actions and conduct were ratified, authorized, approved, and/or known by the corporate defendant's officers and managing agents.

**COMMON ALLEGATIONS TO ALL CAUSES OF ACTION**

8. Defendant, the Department of the Navy ("the Navy"), is one of three military departments within the Department of Defense of the United States.

9. Plaintiff Fred Ellis, began working as a carpenter at the Navy in approximately 2013. He is currently employed by the Navy as a construction mechanic.

10. During his tenure as a carpenter, Plaintiff repeatedly suffered workplace discrimination and harassment in the form of inequitable treatment and racial hostility by his supervisors and coworkers. He was the sole African American male working for Defendants suffered ongoing discrimination in the racist work culture created by Defendants supervisors and his coworkers, who were enabled and harbored by the Defendants.

11. On July 12, 2018, Mr. Ellis filed an Equal Employment Opportunity ("EEO") complaint alleging that the Defendants discriminated against him based on race (African-American), sex (male), and in reprisal for his prior protected EEO activity.

12. When Plaintiff first began filing his EEO complaint, Defendants' management directly advised him not to and, in reprisal for Mr. Ellis continuing the protected activity of filing the complaint, Defendants segregated him to a work facility 51 miles away from his duty station. Defendants purposely and maliciously assigned Mr. Ellis to a rundown facility without proper heating and access to a clean restroom instead of more favorable worksites, which Defendants had assigned to Hispanic and Caucasian coworkers instead. Due to this poor assignment, Defendants did not provide Mr. Ellis the same opportunities to expand his skillset, unlike his Hispanic and Caucasian coworkers. In fact, Defendants' supervisors, at times, assigned less qualified Hispanic and Caucasian coworkers to more favorable projects, ignoring the fact that Mr. Ellis had more job experience.

13. In addition, Defendants deliberately did not provide Mr. Ellis with the same amenities, such as a storage cage, which they did for all other Hispanic and Caucasian employees.

14. As Mr. Ellis sought to expand his skillset, Defendants would undermine Plaintiff by purposely not informing him when new training and promotion opportunities arose. In contrast, Defendants would inform and help enroll Hispanic and Caucasian coworkers in these training programs frequently. Mr. Ellis was purposely denied support from Defendants. On one occasion, when Plaintiff inquired with Defendants about applying to travel for training, Plaintiff's request was ignored and he received no help from Defendants.

15. At one point, Defendants' management orally reprimanded Plaintiff when they felt he had performed a project poorly. Defendants did not orally reprimand Mr. Ellis's Caucasian coworker who worked on the same project.

16. When Mr. Ellis reported that another coworker had deliberately sabotaged a project he was working on to his supervisor, the supervisor and Defendants took no action. This same coworker would frequently harass Mr. Ellis, criticizing his pace on projects and maliciously undermining his ability to get his work done for Defendants; he made racist statements and curiously tried to sabotage the plaintiff's work, such as deliberately and callously bringing a leaf blower into the area in which Plaintiff's cabinetry had been freshly painted and stained, blowing dust on it, requiring Mr. Ellis to redo the paint.

17. Mr. Ellis's supervisor, who was Hispanic, showed him direct hostility due to his race.  At one point, Mr. Ellis's supervisor implied to Mr. Ellis that only Mexicans should be allowed to work at Defendants' facilities in the maintenance department. Defendants' supervisors would make demeaning and negative comments about Plaintiff due to his filing of an EEO complaint. Defendants' supervisors went so far as to have a hostile face-to-face "counseling" session with

COMPLAINT - 6

Mr. Ellis, meant to make Mr. Ellis feel uncomfortable, which Defendants conducted in retaliation for Mr. Ellis filing his EEO complaint.

18. On or about September 26, 2019, while Mr. Ellis was waiting for a safety meeting to begin, Defendants' management allowed the playing of videos that contained white supremacist imagery, including Neo-Nazi and Klu Klux Klan images, along with a video portraying derogatory stereotypes about African-Americans. Mr. Ellis was the only African-American present, and Defendants' management and his coworker sought to make him feel uncomfortable about the two videos' content. Including deliberately having Mr. Ellis sit in the very front row. Despite being present, the Defendants' management did nothing to stop the playing of the videos and continued to do nothing even after other coworkers complained about the videos' racist content.

19. On or about September 27, 2019, Mr. Ellis's supervisor denied his overtime request, citing that no overtime was available for September 28, 2019. Mr. Ellis then overheard his supervisor asking other Hispanic and Caucasian employees if they could work overtime on September 28, 2019.

20. On or about September 30, 2019, the Defendants' supervisors indicated to Mr. Ellis that he was not approved to attend a training class due to a lack of budget. Still, Defendants approved and funded a Caucasian female coworker for the same class. When Mr. Ellis opted to finance the course himself, on October 18, 2019, his supervisor called him into a meeting to inform Mr. Ellis that he would not be granted leave to attend the class, needlessly sabotaging Plaintiff's opportunity to advance his skillset and career.

21. That same month, the same supervisor continued to create a hostile work environment for Mr. Ellis as he began segregating him from other coworkers, reassigning them and leaving Mr. Ellis needlessly to work assignments alone and isolated.

COMPLAINT - 7

22. On January 5, 2020, Mr. Ellis filed another EEO complaint alleging that Defendant discriminated against me based on race (African-American), sex (male), age (over 40), and in reprisal for prior protected EEO activity.

23. Mr. Ellis has suffered and continues to suffer damages in the form of lost wages and other employment benefits.  Mr. Ellis has suffered and continues to suffer extreme emotional stress, including but not limited to frustration, loss of confidence, nervousness, humiliation, depression, anxiety, and panic attacks.

24. Mr. Ellis has exhausted all required administrative remedies.  He initiated his first EEO complaint on or around July 12, 2018. Then his second on January 5, 2020. The EEO completed its investigation and issued its Final Agency Decision on February 10, 2022. The decision was affirmed on appeal on September 5, 2023.

**FIRST CAUSE OF ACTION**
**(Violation of FEHA - California Government Code §12940 (a)**
**[Race, Sex, Gender Discrimination] Against All Defendants and DOES 1-50, except CARLOS DEL TORO)**

25. Mr. Ellis incorporates all paragraphs above and below as though fully set forth herein.

26. The California Fair Employment and Housing Act ("FEHA") declares as a matter of public policy that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, sex or gender.  (Cal. Gov't Code, § 12920.)  The stated purpose of the FEHA is to provide effective remedies that will eliminate these types of discriminatory practices.  (Id.)

27. Under the FEHA an employer may not discharge any person from employment or discriminate against the person in compensation or in terms, conditions, or privileges of employment because of race, sex or gender.  (Cal. Gov't Code, § 12940, subd. (a).)

28. As alleged above in paragraphs 8 through 24, Mr. Ellis was discriminated against and denied equal work privileges due to his race, sex, and gender by Defendants. Specifically, Plaintiff was denied the same benefits necessary to be successful in his role, as his Hispanic, Caucasian and female counterparts. Moreover, he was denied the same training and opportunities to elevate his career unlike his Hispanic, Caucasian and female counterparts. In addition, he was continuously undermined in his role by coworkers and supervisors and made to feel uncomfortable due to his race, while his Hispanic, Caucasian and female counterparts were not treated in this way.

29. As a result of the Defendant's discriminatory conduct, Mr. Ellis has suffered the injuries described in paragraph 23.

## SECOND CAUSE OF ACTION
**(Violation of Title VII - 42 USC § 2000e-2(a)(1)**
**[Race, Sex, Gender Discrimination] Against All Defendants and DOES 1-50, except CARLOS DEL TORO)**

30. Mr. Ellis incorporates all paragraphs above and below as though fully set forth herein.

31. Title VII prohibits the creation of a hostile work environment." [*Vance v. Ball State Univ.* (2013) 570 U.S. 421, 427] The Supreme Court has defined a hostile work environment as one "permeated with discriminatory intimidation, ridicule, and insult … that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." [*Harris v. Forklift Systems, Inc.* (1993) 510 US 17, 21]

32. Here, Mr. Ellis was a well-qualified, carpenter. He had been employed with Defendants for nearly 10 years. During his time as a carpenter, he was subjected to ongoing, egregious discrimination based on his race, gender and sex, including being denied equal advancement opportunities, given poorer working conditions, and treated with hostility due to his race. At times, Defendants calculatedly set Plaintiff up to fail, undermining his experience, and humiliating

him in front of his peers. Supervisors would not inform of help Plaintiff with new training opportunities compare to his Hispanic, Caucasian and female counterparts. Further when Plaintiff attempted to seek training himself to advance his skillset, he was repeatedly denied approval by Defendants' supervisors. He was not given the same amenities as his Hispanic, Caucasian and female counterparts. Supervisors intentionally humiliated him by showing utterly unprofessional racist content during a company meeting. When Plaintiff complained of the disparate treatment and hostile work environment he was then segregated from other employees and given an unequitable amount of work to perform on his own.

33. Defendants did not subject Plaintiff's his Hispanic, Caucasian and female counterparts to these abusive and hostile working conditions. The bullying, targeting, and discrimination completely altered Plaintiff's conditions of his employment, including being denied advancement opportunities. Defendants excluded Mr. Ellis from being able to advance his career and openly targeted Mr. Ellis for his engagement in protected activity. The Defendants enabled this conduct and knowingly allowed the discrimination against Plaintiff to permeate.

34. As a result of the Defendants' discriminatory conduct, Mr. Ellis has suffered the injuries described in paragraph 23.

### THIRD CAUSE OF ACTION
**(For Hostile Work Environment Harassment California Government Code §§ 12923(b), 12940(j) Against All Defendants and DOES 1-50)**

35. Mr. Ellis incorporates all paragraphs above and below as though fully set forth herein.

36. The California Fair Employment and Housing Act ("FEHA") was in full force and effect and was fully binding upon the Defendants. Specifically, California Government Code § 12923(b) states single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile

work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment. In addition, California Government Code §12940(j) (1) prohibits an employer from harassing an employee on the basis of their race, sex or gender.

37. As alleged above, Defendants harassed Mr. Ellis, in multiple ways. One way being through showing unnecessary racist videos, another through comments on the Plaintiff's race compared to his coworkers, such as only Mexicans should work at Defendants. This harassment created a hostile work environment for Mr. Ellis. Defendants' supervisors, in response to Plaintiff's complaints interfered with his work performance by segregating him, excluding him from trainings, and taking steps to sabotage his work, contributing to the hostile environment. Mr. Ellis was bullied and targeted, for reporting his experiences at Defendants. This ongoing harassment was extremely severe and pervasive.

38. As a result of Defendants' harassing conduct, Plaintiff has suffered and continues to suffer damages in the form of lost wages and other employment benefits. As a result of the financial losses and the reduction of his hours, Plaintiff has suffered and continues to suffer emotional stress, including but not limited to frustration, loss of confidence, nervousness, humiliation, paranoia, and anxiety.

### FOURTH CAUSE OF ACTION
**(For Hostile Work Environment-Harassment Title VII; 29 CFR § 1604.11(a) Against All Defendants and DOES 1-50)**

39. Mr. Ellis incorporates all paragraphs above and below as though fully set forth herein.

40. Here, Plaintiff was subjected to hostile work environment due to harassment based on his race and opposing the discrimination thereof.

41. "Title VII prohibits the creation of a hostile work environment." [*Vance v. Ball State Univ., supra*, 570 US at 427, 133 S.Ct. at 2441] The Supreme Court

has defined a hostile work environment as one "permeated with discriminatory intimidation, ridicule, and insult … that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." [*Harris v. Forklift Systems, Inc*. (1993) 510 US 17, 21, 114 S.Ct. 367, 370]

42. Here Defendants undoubtedly subjected Mr. Ellis to this when he subjected him to blatant discrimination both in front his peers and to him privately. He was continuously undermined by his supervisors as he tried to advance his career. First, he was denied training opportunities unlike his Hispanic, Caucasian and female counterparts, while having the same work expectations. Defendants excluded him from trainings. Plaintiff was humiliated and bullied by his coworkers and made to feel uncomfortable about his race by management who allowed the showing of racist material on the jobsite. After he lodged an EEO complaint, he was the target of retaliation by Defendants' leadership who gave him unfavorable assignments and further sought to undermine his work. Without a doubt, Defendant subjected Mr. Ellis to a hostile work environment.

43. As a result of Defendants' harassing conduct, Plaintiff has suffered and continues to suffer damages in the form of lost wages and other employment benefits. As a result of the financial losses and the reduction of her hours, Plaintiff has suffered and continues to suffer emotional stress, including but not limited to frustration, loss of confidence, nervousness, humiliation, paranoia, and anxiety.

## FIFTH CAUSE OF ACTION
**(Violation of FEHA—California Government Code, § 12940 (h) [Retaliation] Against All Defendants, and DOES 1-50, except CARLOS DEL TORO)**

44. Mr. Ellis incorporates all paragraphs above and below as though fully set forth herein.

45. Under the FEHA, an employer cannot discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part. (Cal. Gov't Code, § 12940, subd. (h).)

46. As alleged in paragraphs 8 through 24, Defendants retaliated against Mr. Ellis because he reported and opposed workplace discrimination. First, he filed an EEO complaint. Thereafter he was continually denied equal work opportunities and working conditions of his Hispanic, Caucasian and female counterparts. He was also targeted and humiliated in front of peers and leaders. For example, after he filed an EEO complaint, Defendants' supervisors confronted Mr. Ellis and demanded he retract the complaint, when Mr. Eilis did not, Defendants sent Mr. Ellis to an unfavorable and unsafe workplace location over 50 miles away from his station. Leadership also refused to work with Mr. Ellis to accommodate him with new training opportunities, not informing him of new class and denying his request to attend courses he learned about on his own. Further he was actively humiliated when a racist video was show during a purported safety training session. The close temporal nexus between Mr. Ellis's reporting the discrimination and the Defendants' retaliation is undeniable.

47. As a result of the Defendants' conduct, Mr. Ellis has suffered the injuries described in paragraph 23.

### SIXTH CAUSE OF ACTION
**(Violation of Title VII, 42 USC § 2000e-3(a) – Retaliation Against All Defendants and DOES 1-50, except CARLOS DEL TORO)**

48. Mr. Ellis incorporates all paragraphs above and below as though fully set forth herein.

49. An employer (or other covered entity) may not take any adverse employment action against an employee who has (i) opposed any practice made unlawful by Title VII; or (ii) made a charge, testified, assisted, or participated in

any manner in any investigation, proceeding or hearing under Title VII. [42 USC § 2000e-3(a)]

50. An employee's formal or informal complaints to a supervisor regarding unlawful discrimination is a "protected activity," actions taken against the employee after such complaints may constitute retaliation. It is immaterial whether the employee's complaints were well-founded. [*Passantino v. Johnson & Johnson Consumer Products, Inc.* (9th Cir. 2000) 212 F3d 493, 506-507; see *Badgerow v. REJ Properties, Inc.* (5th Cir. 2020) 974 F3d 610, 619-620; *Redlin v. Grosse Pointe Pub. School System* (6th Cir. 2019) 921 F3d 599, 613; *Miner v. Town of Cheshire* (D CT 2000) 126 F.Supp.2d 184, 192-193—where the plaintiff alleged retaliation within the limitations period, she "could proceed with a retaliation claim even if she is unable to allege or establish claims of sexual harassment within the limitations period"]

51. To constitute retaliation, the employer's action must be severe enough to "dissuade a reasonable worker from making or supporting a charge of discrimination" but need not affect the terms and conditions of employment. [*Burlington Northern & Santa Fe Ry. Co. v. White* (2006) 548 US 53, 57, 126 S.Ct. 2405, 2409; *Laurent-Workman v. Wormuth* (4th Cir. 2022) 54 F4th 201, 216—"materially adverse standard applies to private employees and federal employees alike" (race-based discrimination/retaliation case; internal quotes omitted); *DeMasters v. Carilion Clinic* (4th Cir. 2015) 796 F3d 409, 421-422— Title VII anti-retaliation protections apply to employees whose job responsibilities include reporting discrimination on behalf of co-workers.]

52. "But-for" causation required: Title VII status-based discrimination claims are proved under "a motivating factor" test—i.e., it suffices to show that the motive to discriminate was at least one of the employer's motives, even if other, lawful motives were also causative in the employer's decision. [*University of*

*Texas Southwestern Med. Ctr. v. Nassar* (2013) 570 US 338, 343, 133 S.Ct. 2517, 2522-2523; *Roy v. Correct Care Solutions, LLC* (1st Cir. 2019) 914 F3d 52, 62.]

53. Here, Plaintiff directly complained to supervisors and other various leaders at the Navy multiple times regarding the discriminatory treatment he was receiving, going as far as to file two EEO complaints. After Plaintiff filed his EEO complaint, Defendants targeted him, asking Mr. Ellis to retract the complaint but when Mr. Ellis did not, Defendants proceeded to make it difficult for him to successfully complete his job. Defendants did not provide proper resources, gave Mr. Ellis unfavorable work assignments compared to his Hispanic and Caucasian peers and excluded him from trainings denying him promotional opportunities. Further he was made to be humiliated in front of his peers and staff when management show racist videos during a training meeting. After complaining, Mr. Ellis was segregated from other workers and forced to complete tasks alone and isolated.

54. But for Mr. Ellis complaining and refusing to withdraw those complaints, he was subjected to this conduct, the nexus is undeniable, severe enough to "dissuade a reasonable worker from making or supporting a charge of discrimination."

55. As a result of the Defendants' conduct, Mr. Ellis has suffered the injuries described in paragraph 23.

## SEVENTH CAUSE OF ACTION
**Violation of FEHA—California Government Code, § 12940 (k)
[Failure to Prevent] Against All Defendants and DOES 1-50, except Steven Kitsios)**

56. Mr. Ellis incorporates all paragraphs above and below as though fully set forth herein.

57. Under the FEHA it is unlawful for an employer to fail to take all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring. (Cal. Gov't Code, § 12940, subd. (k)(h))

58. As alleged above in paragraphs 8 through 24, Defendants wholly failed in their duty to prevent discrimination, harassment, and retaliation from occurring. More specifically, Mr. Ellis was an employee of Defendants. As such, Defendants had a duty to take all steps necessary to prevent discrimination, harassment, and retaliation from occurring against Plaintiff. Defendants breached its duty to Mr. Ellis when it failed to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring by allowing Plaintiff's supervisors and coworkers to continuously harass Mr. Ellis and for Defendants' supervisors to retaliate against him after he reported the harassment. Defendants further breached its duty to Mr. Ellis by providing no dialog concerning any reasonable steps Defendants would be taking to prevent discrimination and harassment. Mr. Ellis had been successfully performing his job duties despite the harassment due to his race and gender. Defendants failed to address the harassment, and Mr. Ellis was forced to continue to work directly under Defendants supervisors, even though the Defendants' leadership personnel were notified that his supervisors were discriminating, harassing, and retaliating against Mr. Ellis. Defendants were aware of the EEO complaints filed by Mr. Ellis. The only action taken by Defendants was to reduce Mr. Ellis's work opportunities and continue to undermine his ability to get proper training.

59. As a result of Defendants' conduct, Mr. Ellis has suffered the injuries described in paragraph 23.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For general and special damages arising out of the violation of FEHA and Title VII, and any other law, the wrongful discrimination, harassment and retaliation of Mr. Ellis, which amounts necessarily include lost wages, lost benefits, emotional distress, and other such damages in an amount exceeding the "unlimited" jurisdictional limits of this court, such amount to be subject to proof at the time of trial but;

2. For attorneys' fees Plaintiff has incurred to enforce his rights pursuant to California Code of Civil Procedures sections 1021.5 and 226(g), and Government Code section 12965, subdivision (b), and other statutory bases for attorneys' fees;

3. For prejudgment interest on that amount at the legal rate;

4. For a declaration from this court pursuant to California Government Code section 12965(c)(3) and Title VII as follows:

   a. Defendants' conduct in Discriminating, creating a Hostile Work Environment, and Retaliation of Plaintiff during his employment was an unlawful practice as provided in the Fair Employment and Housing Act, Title VII and in violation of public policy;

   b. Defendants' conduct in allowing Plaintiff to be discriminated against was an unlawful practice as provided in the Fair Employment and Housing Act and Title VII;

   c. Defendants' conduct in allowing Plaintiff to be retaliated against was an unlawful practice as provided in the Fair Employment and Housing Act and Title VII;

   d. Defendants failed to protect Plaintiff against unlawful discrimination and retaliation in violation of the Fair Employment and Housing Act, and is hereby ordered to undertake all reasonable measures necessary to prevent unlawful discrimination, and retaliation, as required by the Fair Employment and Housing Act and Title VII, from this day forward.

5. For injunctive relief arising under FEHA and Title VII;

6. For costs of suit herein, and;

7. For such other and further relief allowed by law and equity as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Fred Ellis demands a jury trial in the above-captioned matter.

Dated: November 16, 2023                                    **JACKSON APC**

By: */s/ Armond M. Jackson*
Armond M. Jackson
Attorneys for Plaintiff Fred Ellis

# CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11

Dated: November 16, 2023               **JACKSON APC**

By: */s/ Armond M. Jackson*
    Armond M. Jackson
    Attorneys for Plaintiff Fred Ellis